## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

|                                      |     |                                   |
| ------------------------------------ | --- | --------------------------------- |
|                                      | )   |                                   |
| **UNITED STATES OF AMERICA**,        | )   |                                   |
|                                      | )   |                                   |
|                                      | )   | Case No. 1:07CR00040              |
| v.                                   | )   |                                   |
|                                      | )   |                                   |
|                                      | )   | **OPINION**                       |
| **WILLIAM RONALD HARRIS**,           | )   |                                   |
|                                      | )   | By:  James P. Jones               |
|                        Defendant.    | )   | Chief United States District Judge|
|                                      | )   |                                   |

*Randy Ramseyer, Assistant United States Attorney, Abingdon, Virginia; William Ronald Harris, Pro Se Defendant.*

The defendant, a federal inmate, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2009), alleging, among other things, that counsel provided constitutionally ineffective assistance of counsel by failing to raise the issue of the defendant's competency before allowing him to plead guilty.  Upon review of the record, I find that the § 2255 motion must be granted.

# I

A grand jury of this court returned a one-count indictment on June 19, 2007 charging William Ronald Harris and Robert William Gudger with one count of mail fraud, in violation of 18 U.S.C.A. §§ 2 & 1341 (West 2000 & Supp. 2009). On July 26, 2007, Harris appeared before the court for the purpose of pleading guilty pursuant to a written plea agreement. During the court of the plea colloquy, however, Harris indicated that he was not guilty of the offense, and for that reason, I refused to accept his guilty plea and rescheduled the case for trial. On December 11, 2007, Harris again appeared before the court seeking to enter a guilty plea, this time without a plea agreement. I questioned Harris carefully to ensure that his plea was knowing and voluntary and expressly informed him, "[D]o you understand you are now under oath, and if you do not answer my questions truthfully, your answers may later be used against you in another prosecution for perjury or for making false statements. Do you understand that?" Harris answered, "Yes." (Plea Tr. 5.)

In response to my questions, Harris indicated that he was 41 years old, that he had gone to the tenth grade in school and had obtained his GED, and that he had worked in cosmetology and data processing. It was brought out that Harris had suffered a head injury in 1990 and was currently taking prescription medications. When I questioned him further, he denied having any further symptoms from the

accident.[1]  I asked counsel if he had any question as to Harris' competency at the time of the plea.  The attorney stated, "Mr. Harris indicates . . . he understands what's going on.  He's indicated as far as being lucid about his conduct to me."  (*Id.* at 8.) I then said to counsel: "You've found that true in your conversations with him?  In other words, he appears to understand what advice you're giving him and assists in the defense of this matter."  Counsel answered, "Yes, Your Honor."  (*Id.*)

Harris indicated that his attorney had spent an adequate time discussing the charges and the case with him and that he was fully satisfied with counsel's representation.  He denied that anyone had promised him anything or threatened him in order to motivate him to plead guilty.  I questioned him about the rights he was

---

[1]  I asked Harris if some of the medications he was taking at the time of the plea hearing were related to the accident in 1990, when he suffered a head injury:

| | |
|---|---|
| HARRIS: | They're from the accident, yes. |
| THE COURT: | And are you having any further symptoms from this accident? |
| HARRIS: | Well, it's not that I'm having further symptoms; I go through a psychiatrist. |
| THE COURT: | Psychologist? |
| HARRIS: | Yeah, that's what you call them.  I go see him every two weeks. |
| THE COURT: | What do you do there? |
| HARRIS: | I go there and tell him what's going on in my life.  He knows all about this, and everything.  So he just talks to me. |
| THE COURT: | You get counseling, in other words? |
| HARRIS: | Yes. |
| THE COURT: | And does he keep your medication straight? |
| HARRIS: | Yes. |

(*Id.* 7.)

relinquishing by pleading guilty, including the right to possess any kind of firearm. Harris stated, "Mr. Judge, sir, by me being bipolar they won't let me." I advised Harris of the maximum penalties and explained the role that the United States Sentencing Guidelines would play in the calculation of his sentence. I warned him that I could impose a sentence more or less severe that the sentenced called for under the guidelines and different than any estimates counsel might have given him. Harris indicated that he understood.

I explained to Harris the elements of the charge to which he wished to plead guilty and what the government would have to prove in order for jurors to find him guilty. He indicated that he understood and stated that he was pleading guilty because he was, in fact, guilty.

When I asked Harris to tell the court what he had done that made him guilty of the charge, he stated: "I ordered CDs and DVDs, you know, using fictitious names, and I paid for some. I didn't pay for them all, but I did do it." (*Id.* at 16.) The prosecutor then described the facts the government was prepared to show proving that Harris and Gudger obtained over $5000 worth of CDs and DVDs through the mail by fraud, and Harris did not contest this evidence.[2] I found that Harris was fully

---

[2] The government's evidence also had evidence that Harris had ordered and received over $1000 worth of jewelry. Harris denied that he ever received any jewelry.

competent and capable of entering an informed plea, and that his guilty plea was knowing and voluntary. Accordingly, I accepted his plea and adjudged him guilty.

I then conducted a detention hearing to determine whether Harris, now convicted, should be taken into custody to await sentencing. In support of the government's motion for detention, the prosecutor presented evidence that while on pretrial supervision, Harris had again fraudulently ordered and received CDs and books through the mail using other people's names. The postal inspector testified that Harris had admitted making up the names and ordering the items, that he was sorry, and that doing such things was a habit he could not seem to stop. Based on this evidence, I ordered that Harris should be detained pending sentencing.

At the beginning of the sentencing hearing on June 9, 2008, Harris' attorney stated that Harris was requesting a psychological evaluation, based on his past brain injury. Counsel stated that Harris "appears to be able to engage in dialogue as far as relates to the case, and appears to understand what's going on in that regard." (Sent. Tr. 3.) Nevertheless, counsel indicated that some of Harris' recent letters had given him concern over his client's mental capacity, and he also noted Harris' other health problems. I noted that according to the Presentence Investigation Report ("PSR"), the brain injury occurred in 1991, the nature of the fraud scheme to which Harris had pleaded guilty did not indicate any type of mental impairment, and the other medical

problems noted in the PSR were not related to mental impairment.[3]  I stated to counsel, "I'm at a loss to know why we ought to . . . continue a proceeding after I've already accepted the defendant's guilty plea and the finding that he was competent, simply because he would like to be examined." (*Id.* at 4.)  Counsel stated, "Judge, that's all I have to offer." (*Id.*)  I denied the motion for psychological examination and proceeded with the hearing.

According to the PSR, the base offense level for Harris' offense was 7.  The PSR calculated the amount of loss generated by Harris' criminal acts at more than $10,000 but less than $30,000 and on that ground, added a four-level increase in the offense level.  The PSR also recommended a two-level increase, because the number of victims involved was more than 10, but less than 50.

I then heard evidence.  The prosecutor called Harris to the stand.  Harris gave a general description of the way that he and Gudger ordered CDs and DVDs, using

---

[3]  Paragraphs 54-55 of the PIR indicate:

In October 1990, the defendant sustained a head injury (i.e. closed head injury - right parietal and bilateral frontal contusion, skull fractures with multiple scalp laceration). This injury required a lengthy term of ongoing medical care in which the defendant had to be trained to talk and walk. He received his treatment at the Good Shepherd Hospital, Allentown, Pennsylvania.

Since 2001, the defendant has been receiving medical care from Twin City Medical Facility, Bristol, Tennessee. He is HIV positive and prior to his incarceration, he was receiving regular treatment and was being prescribed related medications.

fictitious names and false mail-forwarding requests. When the prosecutor asked more specific questions about certain items ordered or received, Harris answered coherently, although sometimes evasively. After several minutes of questioning, he complained that the prosecutor was asking him the same question over and over, blaming him for everything, although his codefendant was also culpable. I ordered Harris to answer the questions to the best of his ability. Instead, Harris declared: "Everything he asks me I'm saying no." (*Id.* 50.)

PROSECUTOR: Chevaront Harris for BMG, you indicated you filled that one out?

HARRIS: No. Well, it's over now. No. Whatever you say, no.

THE COURT: All right. Mr. Harris, if you don't answer the questions–

HARRIS: I'm already in jail. Are they going to give me more time?

THE COURT: Listen to me, Mr. Harris. If you don't answer the questions, then I may have to impose a sanction. I may have to punish you for that.

HARRIS: I'm already punished. I'm in jail. Why are you sending somebody to a mental evaluation that's not mental?

THE COURT: Mr. Harris, why you don't answer the questions. You may subject yourself to further additional punishment. So, I'd advise you to listen to the questions and answer them. That will be the best thing for you. Go ahead, Mr. Ramseyer.

| PROSECUTOR: | Mr. Harris? |
|---|---|
| HARRIS: | No. |
| PROSECUTOR: | You're not going to answer any questions that I ask; is that correct? |

(*Id.* 50-51.)

I recessed court so that Harris could speak with his attorney. When the questioning resumed less than ten minutes later, Harris apologized, stating that he just needed a little break. Harris went through the government's exhibits, indicating which items Gudger had ordered and which ones he himself had ordered. Harris claimed that he originally took the blame for some of Gudger's orders because he feared that Gudger's health problems would keep him from being able to deal with the charges. Harris also claimed that he was not the defendant in some of the prior convictions listed in the PIR and stated that he had not been in Allentown, Pennsylvania since 1989. The probation officer testified that he had verified the paperwork for each of the convictions listed in the PIR. Harris denied that he had opened any mail intended for other people and that he had not unwrapped CDs and DVDs ordered fraudulently, although government witnesses had directly contradicted this testimony.

Based on the evidence presented at sentencing, I made a finding of fact that the loss in the case was over $10,000, as determined in the PIR. Recognizing Harris' claims that Gudger initiated many of the transactions, I stated:

> To speak charitably of Mr. Harris, rankly, the truth is just not in him. . . . His manner of testifying, his obvious lies on the stand and to others are simply symptomatic of the fact that he will say anything that pops into his head that he thinks will help him. I simply disregard his contentions that he didn't do these things.
>
> I think it's clear from the evidence that he was deeply involved in this scheme, and the Government has charged him as an aider and abettor, and I think that's certainly clear. The defendants lived together, they were part and parcel of this scheme, and all of these losses are attributable to Mr. Harris as relevant conduct to the offense to which he's pled guilty. So, I certainly reject his efforts to deflect any of the blame to other people.

(*Id.* at 168.) I also rejected Harris' contention that he was not convicted of all offenses listed in the PSR calculation of his criminal history category and overruled his objections to that portion of the PSR. For the reasons stated by the PSR, I found that under the advisory sentencing guidelines, Harris had a total offense level of 13 and a criminal history category of III, resulting in a sentencing range of 18 to 24 months of imprisonment.

I notified the parties that I was contemplating an upward departure above the guideline range, based on the fact that the defendant's criminal conduct created substantial non-monetary harm for the victims of the mail fraud. I also notified the parties that I was contemplating an additional variance from the guideline range, based on my belief that the public needed protection from Harris' criminal conduct.

Defense counsel argued against any sentence above the guideline range, noting that this was Harris' first felony charge and that Harris had already lost a reduction in

his offense level based on his post-arrest activities. Counsel also asked the court to be merciful, in light of the defendant's prior mental health problems and current health conditions. Harris again complained that he did not commit the crime by himself.

Based on the non-monetary harm to the victims, the public's need for protection, and Harris' continuing failure to recognize the harm his actions caused others, I imposed a sentence of 72 months imprisonment and three years supervised release, thus applying both an upward departure and an upward variance over the guideline range. Judgment was entered on June 11, 2008, with the court reserving the determination of the amount of restitution to be ordered. An amended judgment was entered on September 19, 2008, ordering Harris to pay $4,656.75 in restitution. No appeal was filed.

The court received the present § 2255 motion on July 8, 2009, challenging Harris' conviction. The name "William R. Harris" appeared on the signature line of the § 2255 form. However, below this area appeared the following handwritten note: "I'm signing for Mr. Harris, Mr. Roger Roberts, because Mr. Harris incompetency [sic]. I write for him at all times. Thank you."[4] The § 2255 motion itself alleged these grounds for relief:

---

[4] The record includes no documentation whatsoever indicating that Harris is currently under any court-ordered declaration of mental incompetency or that he has been involuntarily committed for mental health treatment.

1.     Counsel provided ineffective assistance

      a.     by failing to file a notice of appeal as requested;

      b.     by failing to research the case;

      c.     by failing to negotiate a favorable plea agreement;

      d.     by ignoring constitutional rights and failing "to appropriately present a *Booker* issue" during the "waiver review and agreement process"; and

      e.     by failing to investigate the defendant's competency.

2.     The defendant's guilty plea was not knowing and voluntary;

3.     The defendant was incompetent to assist in his own defense; and

4.     The defendant is actually a victim of the crime for which he was convicted.[5]

The government filed a Motion to Dismiss, supported by an affidavit from Harris' defense counsel. Harris responded to the government's motion, submitting a typewritten Reply to Motion to Dismiss, a Declaration, and a Supplement to Reply,

---

[5] Inmate Roberts submitted a second, handwritten document on Harris' behalf on October 27, 2009, raising a claim that Harris was eligible to be considered by the Bureau of Prisons for home confinement near the end of his term of imprisonment. Harris is advised that this claim concerns execution of his sentence. Such claims must normally be addressed in the court with jurisdiction over the facility where the defendant is incarcerated. *See United States v. Miller*, 871 F.2d 488, 490 (4th Cir. 1989). Because Harris is incarcerated in a federal prison in the state of Ohio, this court has no jurisdiction to address any claim he might have under § 2241 regarding execution of his sentence. Accordingly, I will not construe the October 27, 2009 as an amendment seeking to raise a claim under § 2241.

all of which are signed under penalty of perjury by William R. Harris.  Nothing on the documents indicates that anyone else signed for Harris.  I interpret these pleadings as Harris' adoption of the § 2255 arguments filed on his behalf by Inmate Roberts.

In addition to his own allegations, Harris submits several exhibits.  Attached to the § 2255 form is a handwritten document, concerning the fact that Harris had suffered a brain injury in 1990 after he was run over by a truck and was involuntarily committed for mental health treatment in 1991.  The document also complained that Harris' codefendant received a mental competency examination and then entered into a plea bargain.[6]  Harris has also submitted nearly illegible photocopies of paperwork from an Allentown hospital, dated in March 1991, apparently authorizing continued mental health treatment of Harris, based on a finding that he continued to be severely mentally disabled and in need of treatment at that time.  He also submits a form related to Social Security benefits apparently filed in Allentown in 1991.

II

---

[6] Court records indicate that Harris' codefendant, Robert William Gudger, moved for a competency evaluation before trial and was allowed, with no objection from the government, to reside with his mother while receiving mental health treatment to restore him to competency.  In April 2008, the court found Gudger competent, and he pleaded guilty, pursuant to a written Plea Agreement, to an information charging him with aiding and abetting Harris in the mail fraud schemes.  In exchange for the guilty plea, the government dismissed the Indictment as to Gudger.  The court sentenced him to five months imprisonment and ordered him, jointly with Harris, to pay restitution.

To state a claim for relief under § 2255, a federal defendant must prove that one of the following occurred: (1) His sentence was "imposed in violation of the Constitution or laws of the United States"; (2) The "court was without jurisdiction to impose such sentence"; or (3) The "sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C.A. § 2255(a). In a § 2255 motion, the defendant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir.1958) (per curiam).

"[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005). If the court determines that the defendant's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. *Id.* at 220 (internal quotations and citations omitted).

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. *Strickland v. Washington*,

466 U.S. 668, 687 (1984). First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. *Id.* at 687-88. The defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.* at 694-95. When the defendant alleges that counsel's error led him to enter an invalid guilty plea, he can show prejudice only by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). If it is clear that the defendant has not satisfied one prong of the *Strickland/Hill* test, the court need not inquire whether he has satisfied the other prong. *Strickland*, 466 U.S. at 697.

A.  RIGHT OF APPEAL

In Claim 1(a), Harris alleges that counsel failed to file a notice of appeal as requested. He alleges no facts in support of this claim. Counsel states that after sentencing, he advised Harris of his right to appeal the court's sentencing determination, and Harris expressly told counsel that he did not want to appeal.

Counsel submits a document signed by Harris, indicating that counsel advised him of the right to appeal, but that he had instructed counsel "not to file an appeal to the decision rendered by Judge Jones." (Mot. Dism. Attach. 1, Ex. A.) "[A] defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).

Harris does not dispute that he read and signed the document acknowledging that he had consulted with counsel about an appeal and did not want to appeal. Instead, he alleges that he does not recall counsel's advice or signing the document about not wanting to appeal. (Suppl. Reply ¶ 5, Feb. 19, 2010.) He alleges that he "normally signed forms his lawyer told him to sign in order to make the case go away and so he could get out." (*Id.*) He contends that he had no appreciation for what an "appeal" was.

These contentions are directly contradicted by the record. During the plea hearing, Harris indicated that no one had promised him any particular outcome for the case or that he would "get out." (Plea Tr. 10, Dec. 11, 2007.) I specifically asked Harris, "Do you understand that either you or the Government may have the right to appeal your sentence? Do you understand that?" Harris stated, "I do now." (*Id.* at 13.) Also at sentencing, I advised Harris of his right to appeal, the ten-day deadline

in which to do so, the fact that the clerk would prepare and file a notice of appeal on his behalf if requested, and that he could appeal without paying the costs if he qualified.

Harris presents no evidence regarding the extent, if any, to which his mental condition affected his ability to understand or remember such information at the time of the trial proceedings. Counsel's motion at sentencing for a psychiatric evaluation was based on Harris' own desire, his incoherent letters to counsel (which are not in evidence here), and, apparently, his comparison of his own case to that of his codefendant. At that time, I found inadequate support for a continuance in order to conduct a psychiatric evaluation, and I find less support now. Harris fails to offer any circumstance that would prevent his in-court statements of understanding from being considered verified as truth, and accordingly, he is bound by those statements of understanding. *Lemaster*, 403 F.3d at 220. Thus, he is also bound by the undisputed written statement he signed, stating that he did not want to appeal. Counsel cannot be found ineffective for failing to follow his client's express desire not to appeal. *Flores-Ortega*, 528 U.S. at 477. I will deny relief as to Claim 1(a).

B. DEFENDANT'S ALLEGED INCOMPETENCY

To show that he was incompetent to plead guilty, the defendant must demonstrate that "his mental faculties were so impaired . . . when he pleaded that he

was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea." *Roach v. Martin*, 757 F.2d 1463, 1480 (4th Cir. 1985) (citing *Shaw v. Martin*, 733 F.2d 304, 314 (4th Cir. 1984). "[T]h[e] standard of competence to plead guilty parallel[s] the standard the Supreme Court established in *Dusky v. United States*, 362 U.S. 402 (1960) (*per curiam*), for competence to stand trial." *Martin*, 575 F.2d at 1480. The full test for competency is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402.

In Claims 1(b) and 1(e), Harris claims that if counsel had prepared for the case differently, Harris would not have pleaded guilty. He alleges that he himself did not remember the 1990 accident in which he had suffered a traumatic brain injury ("TBI") and did not know he suffered from the after effects of TBI until his mother informed him five months after the guilty plea hearing.[7] He asserts, however, that once he told counsel that he was taking "psychotropic drugs" and was being treated at an area

---

[7] In fact, the parties were aware of and discussed Harris' 1990 head injury and his recovery from that injury, in a bond report and during the plea hearing. (Plea Tr. 6.)

hospital, counsel should have researched the effects of TBI and should have moved for a competency evaluation of Harris before the guilty plea hearing.

These claims fail under *Strickland*. The reasonableness of counsel's inquiry into the facts of the defendant's case is properly determined by the defendant's own statements and actions. *Strickland*, 466 U.S. at 691. If the defendant's actions have reasonably led counsel to believe that a given investigation is unnecessary, counsel's failure to pursue that investigation may not later be found as deficient performance. *Id.*

Counsel indicated to the court during the plea hearing that Harris appeared to understand counsel's advice, to assist in the defense, and to understand the proceedings. (Plea Tr. 7-8.) In his affidavit, counsel offers more specific information about his interactions with Harris before the guilty plea. He states that during his review of the discovery materials with Harris, the defendant appeared to understand the charges and the facts underlying them; that Harris "was able to provide a factual narrative during [counsel's] meetings concerning his underlying conduct which was consistent with the discovery materials"; and that Harris "indicated that he knew it was wrong to have other people's mail forwarded to his address to facilitate the underlying fraudulent scheme." (Mot. Dism. Attach. 1, ¶ 5.)

Harris now alleges that he did not understand these matters, but does not describe any specific symptom or behavior on his part which would have put counsel on notice that he was unable to understand the charges or the proceedings or to assist in his defense. As counsel reasonably believed from the defendant's own conduct that Harris was legally competent, Harris' claims of ineffectiveness fail under *Strickland*. 466 U.S. at 687-88. I will deny relief accordingly as to Claims 1(b) and 1(e).

In Claims 2, 3, and 4, Harris asserts that because of the effects of TBI, including memory loss, schizo-effective disorder, and bipolar syndrome, he understood the guilty plea process simply as a way to end the case. He believed he was guilty only because he had rented the post office box to which Gudger then directed the fraudulently ordered property items, but he allegedly did not understand what fraud was. Because of his mental health problems, he claims he is an innocent victim of Gudger's fraudulent schemes.

All of these claims must be dismissed as "patently frivolous" because they are directly contradicted by Harris' statements to the court during the plea hearing and by his behavior during that hearing. Contrary to his assertions, the court was aware of his accident and his head injury from 1990 and discussed with him whether he suffered any current symptoms from the accident. Harris denied that he had any such symptoms. He stated to the court that counsel had gone over the charge with him

"many times" and that he "fully satisfied" with counsel's representation. (Plea Tr. 8.) When the court explained in detail the charge and the elements that the government would have to prove in order to establish guilt, Harris indicated his understanding. In fact, Harris himself stated, in his own words, what he had done that made him guilty of the charge: "I ordered CDs and DVDs, you know, using fictitious names." (*Id.* at 16.)

Furthermore, Harris' conduct during the plea hearing did not suggest that he was mentally incompetent to enter a valid guilty plea. His answers to questioning did not reflect any inability to appreciate the overall purpose of the hearing–to take his guilty plea and be sure that he understood what he was doing and what the consequences would be. Harris questioned the necessity of the prosecutor's lengthy examination about the individual transactions for which Harris had been charged, and I found that Harris had lied numerous times on the witness stand during this examination. At no point, however, did Harris' behavior suggest that he did not have a rational and factual understanding of the proceedings or an inability to consult with counsel about his defense and the consequences of his actions. Because Claims 2, 3, and 4 are directly contradicted by Harris' statements during the plea hearing, they must be summarily dismissed as without merit:. *Lemaster*, 403 F.3d at 221-22.

C.  OTHER CLAIMS

Harris' remaining claims are too vague and conclusory to warrant relief. He alleges that counsel should have negotiated a better plea agreement, but his own inability to take responsibility for his actions prevented him from entering a valid guilty plea pursuant to the plea agreement that counsel did negotiate on his behalf. Furthermore, he offers no specific provision that counsel should have sought in order to make the plea agreement "better." Similarly, he alleges that counsel should have presented "a *Booker* issue," but fails to offer any explanation of this issue or how it might have resulted in a different outcome.

In short, Harris has failed to meet his burden of forecasting a preponderance of the evidence on which he would be entitled to relief under § 2255. He is not entitled to an evidentiary hearing to develop evidence that *might have* mitigated against his conviction or sentence. Taking his current allegations into account, I remain convinced that Harris' guilty plea was valid and that his sentence was appropriate to his conduct. Accordingly, I must deny relief as to all of the grounds he has raised.

## III

For the stated reasons, I will grant the Motion to Dismiss. A separate Final Order will be entered herewith.

ENTER: June 7, 2010

/s/ JAMES P. JONES
Chief United States District Judge